UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2002 IRREVOCABLE TRUST FOR RICHARD
C. HVIZDAK a legal trust, 2007
RICHARD C. HVIZDAK SEPARATE TRUST a
Delaware trust, RCH TRUST HOLDINGS
I,LP a Delaware limited partnership,

        Plaintiffs,

vs.                              Case No.  2:08-cv-556-FtM-99DNF

THE   HUNTINGTON   NATIONAL   BANK
successor by merger with Sky Bank,
FOSHAN POLY MARINE ENGINEERING CO.,
LTD a Chinese corporation, SHENZHEN
DEVELOPMENT BANK CO. LTD.,

        Defendants.
_____

## OPINION AND ORDER

     This matter comes before the Court on Defendant Shenzhen Development Bank's Motion to Dismiss Plaintiffs' Verified Complaint (Doc. #39) filed on September 5, 2008.  Plaintiffs filed a Response to Motion to Dismiss (Doc. #46) on October 3, 2008.  The Court heard oral argument on October 31, 2008.

### I.

     Generally, to satisfy the pleading requirements of Rule 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512

(2002) (citing FED. R. CIV. P. 8).   The complaint must include factual allegations adequate to raise a right to relief above the speculative level, that is, to set forth a plausible entitlement to relief.   Bell Atl. Corp. v. Twombly, 550 U.S. ___, 127 S. Ct. 1955, 1964-67 (2007)[1]; Erickson v. Pardus, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007); Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282 (11th Cir. 2007).

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.   Erickson, 127 S. Ct. at 2200; Christopher v. Harbury, 536 U.S. 403, 406 (2002).   On the other hand, conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts are insufficient to prevent dismissal. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004) (citation omitted).   Dismissal is warranted under FED. R. CIV. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.   Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

---

[1]The former rule had been that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief."   La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).   The Eleventh Circuit has stated that Twombly retired this often-criticized standard.   James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1273-74 (11th Cir. 2008).

In deciding a Rule 12(b)(6) motion, the Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. <u>La Grasta v. First Union Sec., Inc.</u>, 358 F.3d 840, 845 (11th Cir. 2004).  The Court may also consider documents that are central to the plaintiff's claim whose authenticity is not challenged, whether the document is physically attached to the complaint or not, without converting the motion into one for summary judgment. <u>Day v. Taylor</u>, 400 F.3d 1272, 1276 (11th Cir. 2005); <u>Maxcess, Inc. v. Lucent Techs., Inc.</u>, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); <u>Fin. Sec. Assur., Inc.</u>, 500 F.3d at 1284.

A motion to dismiss for improper venue pursuant to FED. R. CIV. P. 12(b)(3) and a motion to dismiss for failure to join a party under Rule 19 pursuant FED. R. CIV. P. 12(b)(7) are both addressed to the sound discretion of the court.  The Court may consider matters outside the four corners of the complaint in deciding such motions. <u>Lipcon v. Underwriters at Lloyd's, London</u>, 148 F.3d 1285, 1290 (11th Cir. 1998)(dismissal for improper venue, "at least in the context of international agreements, require a complex analysis of fundamental fairness and public policy.")

## II.

Foshan Poly Marine Engineering Co., Ltd. (Foshan Shipyard), a company incorporated and located in China, is in the business of building marine vessels.  Foshan Shipyard utilized Custom Marine

International, Inc. (CMI), a Maryland corporation, as its agent to secure construction contracts for luxury yachts to be built by Foshan Shipyard in China.

On or about August 10, 2004, Richard C. Hvizdak (Hvizdak) entered into two separate Sales Contracts[2] with CMI and Foshan Shipyard in which Hvizdak agreed to purchase two 127-foot luxury motor yachts (identified individually as F127-1 and F127-2 and herein collectively as the Yachts) for $6.5 million apiece. Under the Sales Contracts, CMI was the Seller of the Yachts (Doc. #1-2, p. 6), and CMI and Foshan Shipyard jointly and severally were the Builder of the Yachts (Doc. #1-2, p. 3). CMI agreed to "design, sell, and deliver, and retain the Builder to construct, complete, and trial" the two Yachts, and Hvizdak[3] agreed to purchase and accept delivery of the Yachts from the CMI. As conditions precedent to the Effective Date and Final Effective Date of the Sales Contracts, Hvizdak was required to obtain two $2.5 million standby irrevocable Letters of Credit issued by The Huntington National Bank (Huntington Bank) in favor of Shenzhen Development

---

[2]The Sales Contracts were amended three times. The Court's summary of the terms of the Sales Contracts reflect their final amended form.

[3]On August 19, 2004, Hvizdak assigned the two Sales Contracts to 2002 Irrevocable Trust for Richard C. Hvizdak (the 2002 Trust); thereafter, the two Sales Contracts were assigned by the 2002 Trust to 2007 Richard C. Hvizdak Separate Trust (2007 Trust); thereafter, the two Sales Contracts were assigned by the 2007 Trust to RCH Trust Holdings I, LP (RCH). For simplicity, the Court will refer to the various entities as Hvizdak unless otherwise noted.

Bank Co., Ltd. (SDB), the Builder's bank.   (Doc. #1-2, p. 8.)
Additionally, as conditions precedent to the Effective Date and
Final Effective Date of the Sales Contracts, CMI was required to
obtain two $6.5 million performance bonds in favor of Hvizdak.
(Doc. #1-2, pp. 8-9.)

The purchase price was to be $6.5 million in U.S. Dollars, FOB
China, for each yacht.  Terms of payment related to the Letters of
Credit.  Within twenty days of the effective date of the Sales
Contracts, Hvizdak was to cause Huntington Bank to issue to the
Builder (CMI and Foshan Shipyard) for the benefit of its bank
(SDB), an irrevocable standby letter of credit in the amount of
$2.5 million.  When the Builder completed each yacht's hull and
verified shipment of the engines, the Letters of Credit were to be
increased by $3 million each.  Ninety days prior to completion of
construction, the Letters of Credit would be increased by another
$1 million each.  (Doc. #1-2, pp. 19-20.)

The Sales Contracts (Docs. ## 1-2, 1-3) provided that the form
Letter of Credit must provide that SDB could draw on the Letters of
Credit only by presenting a certification with its draft:

> The amount of this Letter of Credit is available for
> payment at sight by your draft drawn on (bank) and
> accompanied by a dated statement purportedly signed by an
> officer of the beneficiary, certifying that:
> The amount of the draft drawn hereunder represents and
> covers unpaid balance of indebtedness including interest
> and bank charges, if any, due to the beneficiary by
> FoShan Poly Marine Engineering Co. Ltd.; per yacht
> building contract No. F127-1 [or F127-2].

The Sales Contracts established that the parties knew the Yachts were to be commissioned in the United States (Sales Contract, § 12.1.3), and CMI stated that it intended to import the Yachts from China to the United States to a port in the State of Florida (Sales Contracts, § 15.3.)  The Sales Contracts provided that they would be governed by and construed in accordance with the laws of the State of Florida, except for Florida's conflicts of law principles.  (Sales Contract, § 23.)  Disputes between the parties were to be resolved by arbitration in Miami, Florida in arbitration proceedings conducted in English.  (Sales Contract, § 24.1.)

The Sales Contracts were signed by Peter Tsou as President of CMI and as Agent of Foshan Shipyard.  Richard C. Hvizdak signed on behalf of the purchasing entities.

On August 23, 2004, the predecessor of Huntington Bank issued two identical Letters of Credit, each in the amount of $2.5 million.  The beneficiary of each Letter of Credit was SDB, and the purpose of each of to secure loans from SDB to Foshan Shipyards for work on the Yachts.  One Letter of Credit was earmarked for each of the yachts.  The two Letters of Credit were not available for SDB's draw until July 21, 2008.

On January 5, 2005, Hvizdak terminated both Sales Contracts pursuant to their terms because no construction on either yacht had commenced and Foshan Shipyard and CMI had failed to post the two $6.5 million performance bonds required by the Sales Contracts.

-6-

On January 6, 2006, Hvizdak requested Huntington Bank to cancel the two $2.5 million Letters of Credit pursuant to the Sales Contracts.  Huntington Bank contacted SDB to cancel the two Letters of Credit, but SDB refused to cancel them.  SDB asserted that RMB 40 million (approximately $5 million) had been loaned to Foshan Shipyard on September 1, 2004 and was still outstanding, and that the Letters of Credit were the security for this loan.  (Doc. 1-4, p. 9.)

Plaintiffs assert that they later discovered that the entire yacht building project was a scam perpetrated by Foshan Shipyard, CMI, and SDB to induce American citizens to post Letters of Credit for vessel construction security and then fraudulently use the Letters of Credit to get "free" money from SDB and leave the liability with the Letter of Credit applicants.  Plaintiffs allege that the events involving them were not the first time Foshan Shipyard, CMI, and SDB have been involved in similar fraudulent activity.  The scheme involved individuals at SDB who would approve fraudulent loans to Foshan Shipyard, receive a kickback for the loan, then use a fraudulently induced Letter of Credit from fraud victims as security for the sham loan.  Plaintiffs allege that SDB knew that any "loan" made to Foshan Shipyard based on the Letters of Credit posted by Hvizdak would not be used for the purpose of construction the Yachts, knew that the Letters of Credit were used as a subterfuge to steal money from Hvizdak, and knew that any draw by SDB on the Letters of Credit would be fraudulent.

The Complaint (Doc. #1) alleges the following claims: Count I alleges fraud against SDB as the beneficiary of the Letters of Credit.  This count alleges that individuals inside SDB who were materially in charge of approving and facilitating the money transfers at issue agreed with each other and Foshan Shipyard and CMI to commit fraud.  Specifically, the SDB individuals actually or constructively knew that Foshan Shipyard was never to commence construction of the Yachts, and received bribes and kickbacks in exchange for their facilitation and approval of the money transfers knowing they were never to be used in accordance with the Letters of Credit despite looking to the Letters of Credit for repayment. SDB refused to cancel the Letters of Credit despite a valid cancellation request, and knowingly made material misrepresentations that it had loaned moneys to Foshan Shipyard under the terms of the Letters of Credit.  Plaintiffs allege that SDB's omissions, material misrepresentations and fraudulent loans constituted fraudulent conduct which induced plaintiffs into reasonable reliance and have caused damages and irreparable injury.

Count II alleges fraud against Foshan Shipyard, who is not a party to the motion to dismiss.  Further discussion of this count is therefore unnecessary.

Count III alleges a civil conspiracy against Foshan Shipyard and SDB.  Plaintiffs allege that Foshan Shipyard, CMI and SDB conspired to defraud them of at least $5 million.  The conspiracy existed to allow moneys from SDB to flow into the hands of CMI,

Foshan Shipyard, and SDB (in the form of a kickback to certain banking individuals) and that loan money would be secured by the fraudulently obtained Letters of Credit. All co-conspirators are alleged to have known that construction of the Yachts would never take place. Three overt acts are listed: execution of the Sales Contract; funding to Foshan Shipyard for construction of the Yachts; and obtaining the Letters of Credit from plaintiffs. Plaintiffs also alleged that these parties have engaged in similar scheme(s) in the past. Damages in excess of $5 million are claimed.

Finally, Count IV seeks injunctive relief pursuant to FLA. STAT. §675.109(2) to enjoin Huntington Bank from paying the $5 million draw request by SDB. Plaintiffs assert that honoring SDB's presentation would be fraudulent on its face and would facilitate and complete the last step in a material fraud by SDB on Huntington Bank and plaintiffs because SDB knew it was lending funds that were wholly unrelated to the Yachts or Sales Contracts, thus making the presentations on the Letters of Credit fraudulent, and because SDB knew that the Letters of Credit were fraudulently obtained as security for sham loans.

### III.

Defendant SDB seeks to dismiss the Complaint on the basis of *forum non conveniens*, failure to join necessary parties, and

failure to state a claim.   The Court discusses each assertion in turn and notes that the Complaint is a shotgun pleading.

## A.   *Forum Non Conveniens:*

Defendant argues that the action must be dismissed for *forum non conveniens*, arguing that the proper venue for these claims is in China.  Not surprisingly, plaintiffs argue to the contrary.

Under the proper circumstances a federal district court may dismiss an action based on the principle of *forum non conveniens*.

> A federal court has discretion to dismiss a case on the ground of *forum non conveniens* when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience, or the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems.

Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, ____, 127 S. Ct. 1184, 1190 (2007)(citations and internal ellipses omitted.)  The governing legal principles have been set forth in a number of Eleventh Circuit cases, including Liquidation Comm'n of Banco Intercontinental, S.A. v. Alvarez Renta, 530 F.3d 1339, 1356-57 (11th Cir. 2008); Membreno v. Costa Crociere S.P.A., 425 F.3d 932, 933-38 (11th Cir. 2005); SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097,  1100-04 (11th Cir. 2004); Ford v. Brown, 319 F.3d 1302, 1306-1311 (11th Cir. 2003); Leon v. Millon Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001); Satz v. McDonnell Douglas Corp., 244 F.3d 1279, 1282-84 (11th Cir. 2001).

"Domestic plaintiffs enjoy a strong presumption that their chosen forum is convenient . . . ." <u>Renta</u>, 530 F.3d at 1356. Therefore, "[a] defendant invoking *forum non conveniens* ordinarily bears a heavy burden in opposing the plaintiff's chosen forum." <u>Sinochem</u>, 127 S. Ct. at 1191.  To prevail on a motion to dismiss for *forum non conveniens*, the moving party must show that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.  <u>Renta</u>, 530 F.3d at 1356.

Defendant argues that all three elements are satisfied in this case.  Plaintiffs assert none are satisfied, or at least none are sufficient to rebut the presumption of their chosen forum.

**(1) Available and Adequate Alternative Forum:**

Defendant argues that courts in China are both available and adequate as a forum to resolve the disputes in this case, relying upon a Declaration of Randall Peerenboom and a number of decisions by other courts finding China to be an available and adequate forum.  Plaintiffs respond that China is not necessarily available because, while SDB agrees to waive service of process in China, it has not shown that <u>all</u> defendants are amenable to service in China. Specifically, plaintiffs argue that SDB has not shown that Huntington Bank is amenable to service in China, or that CMI and

Peter Tsou, which SDB contends are necessary parties to this lawsuit, are amenable to service of process in China.

Availability and adequacy are separate considerations. <u>Leon</u>, 251 F.3d at 1311. "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." <u>Leon</u>, 251 F.3d at 1311. Defendant must be amenable to process in the alternative jurisdiction. <u>Satz</u>, 244 F.3d at 1282. An "adequate" alternative forum is one that offers at least some relief with a reasonable level of impartiality and efficiency. <u>Leon</u>, 251 F.3d at 1311-12; <u>Satz</u>, 244 F.3d at 1283.

Defendant concedes that it cannot establish that Huntington Bank would be subject to service of process in China. Huntington Bank affirmatively asserts that it would not be subject to jurisdiction of a court in China, and nothing proffered by the parties establishes otherwise. While Huntington Bank was a necessary party to this action as to Count IV for injunctive relief, the parties have now resolved the issue of injunctive relief by agreeing that SDB would post a bond or letter of credit and Huntington Bank would then be allowed to release the two Letters of Credit to SDB. <u>See</u> Docs. #60, 61. Therefore, it does not appear that Huntington Bank would be a party to the action if it was re-filed in China.

There can be little doubt that CMI and Peter Tsou are subject to process in China. CMI is incorporated in China and does

business there; Tsou is a Chinese citizen, the president of CMI, and does business in China.

The fairness of the Chinese courts are not seriously questioned by plaintiffs, and both the affidavit of Randall Peerenboom and the case law are sufficient to establish this element.  If plaintiffs obtain a judgment, the Chinese courts will enforce that judgment against defendants.

The Court finds that SDB has established that China is available to the plaintiff because a Chinese court can assert jurisdiction over the remaining claims and parties in this litigation.  SDB has also shown that the remaining necessary defendants will be amenable to process in China.  Additionally, SDB has established that China is an adequate forum because it offers at least some relief with a reasonable level of impartiality and efficiency.  Therefore, this factor weighs in favor of SDB.

**(2) Private Interests:**

Defendant asserts that the private interests overwhelmingly favor dismissal, while plaintiffs argue they either favor the current forum or are in equipoise.  The Court finds that the private interests are essentially in equipoise.

"Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment." Renta, 530 F.3d at 1356.  Also included are all other practical problems that make

-13-

trial of a case easy, expeditious and inexpensive, and the relative advantages and obstacles to a fair trial. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." Ford, 319 F.3d at 1308.

Plaintiffs' choice of forum is a private interest factor that "should rarely be disturbed unless the balance is strongly in favor of the defendant." SME Racks, Inc., 382 F.3d at 1101, citing Gilbert, 330 U.S. at 508. "This presumption in favor of the plaintiffs' initial forum choice in balancing the private interests is at its strongest when the plaintiffs are citizens, residents, or corporations of this country." SME Racks, Inc., 382 F.3d at 1101. A district court must have positive evidence of unusually extreme circumstances, and must be thoroughly convinced that material injustice is manifest before exercising its discretion to deny a United States citizen access to courts of the United States. SME Racks, Inc., 382 F.3d at 1101.

The elements of a fraud claim under Florida law are (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied upon

-14-

the false statement to its detriment.  <u>Rose v. ADT Sec. Servs.</u>, 989 So. 2d 1244, 1247 (Fla. 1st DCA 2008).  Plaintiffs allege that SDB, Foshan Shipyard, CMI, and Tsou engaged in a scheme to defraud by falsely representing that Foshan Shipyard would construct two yachts, causing the issuance of two letters of credit to secure payment for the two yachts, failing to even begin construction on the two yachts, and then maintaining an entitlement to draw upon the two letters of credit.

It is clear that evidence necessary to prove and disprove these elements are located in both China and the United States. The scheme is alleged to have been concocted by two Chinese companies and a United States company, as well as a Chinese employee/agent of the companies who also operated in furtherance of the scheme in Florida.  Much, but not all, of the fraudulent conduct took place in China, including the failure to construct the Yachts and the paperwork between SBD and Foshan Shipyard.  The documents from SBD can be obtained in this case, since SBD has submitted to the jurisdiction of the court.  Additionally, the parties have each shown an ability to obtain evidence from China in connection with the preliminary injunction hearing.  Some of the documents are in Chinese, and some are in English; therefore translations will be required wherever the case is prosecuted. Some witnesses may only be available in China, and some witnesses may only be available in the United States.  While co-defendant Foshan Shipyard has so far avoided service of process, the case is

still relatively new.  Finally, the Court is not persuaded by defendant's argument that it will be at a disadvantage if required to proceed as the only defendant in this action because plaintiffs are unable to serve the joint tortfeasor(s).  Trying a case with "open chairs" is simply not always a disadvantage for a defendant, particularly where as here even plaintiffs allege wrongdoing by these missing parties.  On balance, the Court finds that there is no evidence of unusually extreme circumstances or material injustice which would justify rejecting plaintiffs' choice of forum.

**(3) Public Factors:**

"Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally," Renta, 530 F.3d at 1356-57, as well as the interests of the states of the United States and the United States federal government.  SME Racks, Inc., 382 F.3d at 1104.

Defendant argues that the public factors also favor dismissal because China has an interest in adjudicating allegations of fraud by Chinese on Chinese soil, China is the most efficient forum for trial, and Chinese law will govern.  Plaintiffs respond[4] that the

---

[4]Plaintiffs assert that the Court need not discuss the public factors because the private factors weigh against dismissal. However, the Eleventh Circuit has stated that the court should (continued...)

case has unique and compelling ties to the United States because the injury occurred in the United States, plaintiffs are U.S. trusts, the negotiations and tenders of the Vessel Construction Agreement took place in the United States, the scam focused on and harmed the United States and its citizens, the choice of venue in the Sales Contracts is within the United States, the choice of law provisions call for U.S. law to apply, and the United States as a sovereign has a significant interest in protecting its citizens against foreign fraud.  Plaintiffs also assert that it is not clear that Chinese law will apply to this case, or if it does, how difficult it would be to determine and apply Chinese law.

As in SME Racks, Inc., both the State of Florida and the United States government have significant interests in making sure their citizens generally get to choose an American forum when the claims are fraud and the underlying transaction was actively solicited and caused harm in the United States by using a United States corporation as an agent or intermediary.  It is also true that China has an interest in the case, particularly since the alleged fraudulent activities were committed in part by a Chinese government sponsored bank.  Further, the application of foreign law is an important factor, but "cannot be accorded dispositive weight."  SME Racks, Inc., 382 F.3d at 1104-05.  No court in China

---

[4](...continued)
consider both public and private factors in all cases.  SME Racks, Inc., 382 F.3d at 1100 n.5.

has been involved in the dispute, so there are no issues of comity and the respect of a foreign sovereign.

The Court concludes that defendant has not rebutted the presumption that plaintiffs' choice of forum should be honored. While China is an available and adequate forum, the public and private interests are essentially even and do not establish that the forum of the case should be changed. Therefore, defendants' motion to dismiss on this basis will be denied.

**B.    Failure to Join Indispensable Parties:**

Defendant asserts that the action should be dismissed because the Complaint fails to name CMI and CMI executive Peter Tsou (Tsou) as defendants. Defendant asserts that as joint-tortfeasers, both are indispensable and necessary parties.

The Court uses a two step test for determining whether an action should proceed in the absence of a non-party. United States v. Rigel Ships Agencies, Inc., 432 F.3d 1282, 1291 (11th Cir. 2005). "A party is 'indispensable' only if he meets either of the threshold tests of Rule 19(a) of the Federal Rules of Civil Procedure." MS Dealer Serv. Corp. v. Franklin, 177 F.3d 942, 946 (11th Cir. 1999). Rule 19(a)(1) now provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or

> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> >
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a), as amended effective December 1, 2007. Thus, "[t]he first question is whether complete relief can be afforded in the present procedural posture, or whether the nonparty's absence will impede either the nonparty's protection of an interest at stake or subject parties to a risk of inconsistent obligations." Rigel Ships, 432 F.3d 1291, quoting City of Marietta v. CSX Transp. Inc., 196 F.3d 1300, 1305 (11th Cir. 1999). If the answer to this first question is "no," the court need not reach the second part of the test, which analyzes the factors in Rule 19(b). Id.

Both of the two initial prerequisites of Rule 19(a) are satisfied. It is clear that both CMI and Tsou are persons subject to service of process in this action. It is also clear that their joinder will not deprive the court of subject matter jurisdiction; CMI appears to be a citizen of Maryland and Tsou appears to be a citizen of China, and their joinder will not destroy the diversity jurisdiction of the court. However, neither of the two remaining requirements are satisfied. "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple v. Synthes Corp., 498 U.S. 5, 7

(1990); <u>see also</u> <u>MS Dealer Serv. Corp.</u>, 177 F.3d at 946.
Defendant's reliance on <u>Laker Airways, Inc. v. British Airways, PLC</u>
182 F.3d 843 (11th Cir. 1999) is misplaced because that case
involved antitrust claims that caused the circumstances to be "more
significant than those of a routine joint tortfeasor."   <u>Laker</u>
<u>Airways</u>, 182 F.3d at 847-48.   No such special circumstances are
present in this case.   Therefore, this aspect of defendant's motion
is denied.

**C.   Economic Loss Rule:**

Defendant asserts that the action must be dismissed because
the economic loss doctrine precludes plaintiffs' tort claims
against it.   Under Florida law, "[t]he economic loss rule is a
judicially created doctrine that sets forth the circumstances under
which a tort action is prohibited if the only damages suffered are
economic losses." <u>Indem. Ins. Co. v. Am. Aviation, Inc.</u>, 891 So.
2d 532, 536 (Fla. 2004).   As applicable here, the economic loss
rule applies "when the parties are in contractual privity and one
party seeks to recover damages in tort." <u>Id.</u> "The Florida Supreme
Court has announced that 'by recognizing that the economic loss
rule may have some genuine, but limited, value in our damages law,
we never intended to bar well-established common law causes of
action.'"   <u>D&M Jupiter, Inc. v. Friedopfer</u>, 853 So. 2d 485, 487
(Fla. 4th DCA 2003)(quoting <u>Moransais v. Heathman</u>, 744 So. 2d 973,
983 (Fla. 1999)).   Thus, "the economic loss rule does not bar tort
actions   based   on   fraudulent   inducement   and   negligent

misrepresentation." Id. "The test to determine if the economic loss rule applies is to ask if the fraud alleged is in an act of performance or in a term of the bargain." Id. (citing Allen v. Stephan Co., 784 So. 2d 456, 457 (Fla. 4th DCA 2000)). "[W]hen the fraud 'relates to the performance of the contract the economic loss doctrine will limit the parties to their contractual remedies.'" Id. However, "when the 'fraud occurs in the connection with misrepresentations, statements or omissions which cause the complaining party to enter into a transaction, then such fraud is fraud in the inducement and survives as an independent tort." Id. at 487-88.

Under these principles the fraud claim set forth in the Complaint is not barred by the economic loss rule. Plaintiffs allege that the fraud was perpetrated in connection with their inducement to enter the Sales Contract, which led to the two letters of credit with SDB as beneficiary. Plaintiffs do not allege fraud in the performance of the Sales Contract. Therefore, this aspect of defendant's motion is denied.

**D.   Fraud Claim:**

Defendant asserts that the fraud claim against it must be dismissed as a matter of law because it is not plead with the required particularity set forth in FED. R. CIV. P. 9(b) and fails to adequately allege all the elements of fraud. The Court agrees, but because a fraud claim may be properly pled, the Court will allow plaintiffs to file an "Amended Verified Complaint".

Rule 9(b) requires a complaint to set forth (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). The Complaint is essentially required to identify the "who, what, when, where, and how . . . ." Garfield, 466 F.3d at 1262. "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42 (2006).

Defendant correctly asserts that the only allegedly false statement set forth in the Complaint attributed to SDB is the January 6, 2006, SWIFT message from SDB to Huntington Bank refusing to cancel the Letters of Credit because it had loaned RMB 40,000,000 to Foshan Shipyard under the terms of the Hvizdak letters of credit, which amount was still outstanding against the Letters of Credit. (Doc. #1, ¶¶ 35-36, 58-59.) The Court finds this false statement to be sufficiently pled under the principles summarized above.

While the Complaint refers to "omissions," (Doc. #1, ¶ 60), no omissions are specifically identified. Therefore, the requirements

of Rule 9(b) are not satisfied as to omissions.  Therefore, the Court's consideration of the fraud claim is limited to the single identified false statement.

Defendant argues that the allegations that it "knew" the Yachts would not be built were not supported by specific factual allegations and therefore violate Rule 9(b).  However, allegations of intent or knowledge may be plead generally, even under Rule 9(b).  Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).  Therefore, this argument is without merit.

Finally, defendant argues that plaintiffs could not have relied upon the only false statement attributed to SDB and it could not be material because the false statement occurred after plaintiff cancelled to Sales Contracts for reasons unrelated to the Letters of Credit, i.e., because there were no Performance Bonds obtained.  The Court agrees.  The only false statement attributable to SDB was not relied upon by plaintiffs in any fashion.  Not only did it occur after the alleged fraud had occurred, but the Complaint affirmatively demonstrates that plaintiffs took no actions because of that statement to their detriment.  Thus, plaintiffs could not have been influenced in any respect by the SDB representation regarding its loans to Foshan Shipyard, and indeed plaintiffs continued to want the Letters of Credit cancelled regardless of the truth or falsity of the representation.

Plaintiffs alleged that they relied on SDB "to not commit fraud."  Florida law requires reliance upon the omission or false

statement to plaintiffs' detriment, <u>Rose</u>, 989 So. 2d at 1247, not reliance on the generic obligation not to commit a fraud. Therefore, SDB's motion to dismiss is granted as to the fraud claim against them (Count One).

**E.  Conspiracy Claim:**

Defendant asserts that the conspiracy claim against it must be dismissed as a matter of law because the Complaint does not allege an underlying tort in support of the conspiracy.  (Doc. #39, p. 23.)  The Court notes that plaintiffs' Response does not address this basis of the motion to dismiss.

The Court agrees with defendant.  A civil conspiracy claim requires: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." <u>Charles v. Fla. Foreclosure Placement Ctr., LLC</u>, 988 So. 2d 1157, 1159-60 (Fla. 3d DCA 2008)(internal citations omitted).  "A civil conspiracy claim is not an independent cause of action in Florida . . . ." <u>Behrman v. Allstate Life Ins.</u>, 178 Fed. Appx 862 (11th Cir. 2006).  Having dismissed plaintiffs' fraud claim, the Court must now dismiss the civil conspiracy claim as there is no longer an underlying tort or underlying unlawful act to form the basis of the conspiracy.  Therefore, this aspect of defendant's motion to dismiss is granted.

**F.    Laches:**

Defendant asserts that all claims must be dismissed against it because of laches.  Laches is a defense which under Florida law requires proof of (1) the lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.  See <u>McCray v. State</u>, 699 So. 2d 1366, 1368 (Fla. 1997).  Upon review of SDB's motion and the Complaint, the Court finds that defendants have not met their burden at this stage of the proceedings to warrant dismissal under the doctrine of laches.  SDB's main assertion is that plaintiffs were delinquent in enforcing their rights in a timely matter.  (Doc. #39, p. 24.)  However, mere delay in enforcing one's rights or filing suit is insufficient to constitute latches.  The delay must practically "preclude the court from arriving at . . . the truth of the matters in controversy, making the achievement of equity doubtful or impossible, or subsequent events must have rendered it inequitable to enforce the asserted right."  <u>Logan v. Logan</u>, 920 So. 2d 796, 799 (Fla. 5th DCA 2006)(internal citations omitted).  Therefore, this aspect of defendant's motion to dismiss is denied.

**IV.**

Upon review of the Complaint (Doc. #1), the Court also finds that it is a shotgun pleading.  Each of the four counts includes an allegation wherein plaintiff reincorporates all the preceding paragraphs.  (Doc. #1, ¶¶ 52, 63, 68, 80.)  "The typical shotgun

complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts [ ] contain irrelevant factual allegations and legal conclusions." Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002). The Eleventh Circuit has consistently frowned upon shotgun pleadings such as the one presented by counsel, and shotgun pleadings "exact an intolerable toll on the trial court's docket." Cramer v State of Fla., 117 F.3d 1258, 1263 (11th Cir. 1997). Therefore, plaintiffs' Complaint is dismissed with leave to amend.

Accordingly, it is now

**ORDERED:**

1.   Defendant Shenzhen Development Bank's Motion to Dismiss Plaintiffs' Verified Complaint (Doc. #39) is **GRANTED in part** and **DENIED in part** as set forth above and the Verified Complaint (Doc. #1) is **dismissed.**

2.   Plaintiffs' request for leave to amend (Doc. #46, p. 21) is **GRANTED.**  Plaintiffs may file an Amended Verified Complaint within **TWENTY (20) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this   1st   day of December, 2008.

John E. Steele
JOHN E. STEELE
United States District Judge


Copies: Counsel of record